### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RIKKENDO BEARD, | : | |
| | : | |
| *Plaintiff,* | : | CIVIL ACTION |
| | : | NO. 25-cv-1436-JHS |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| *Defendants.* | : | |

### ORDER

**AND NOW**, this _____ day of _____, 2025, upon consideration of the Defendant City of Philadelphia's Motion to Dismiss the Complaint, and Plaintiff Rikkendo Beard's Response in Opposition, it is hereby **ORDERED** that Defendant City of Philadelphia's Motion is **DENIED**. It is further **ORDERED** that Defendant City of Philadelphia shall answer Plaintiff's Complaint within twenty (20) days of the docketing of this Order.

BY THE COURT:

_____
Joel H. Slomsky,
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RIKKENDO BEARD | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 25-cv-1436-JHS |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| *Defendants.* | : | |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS OF
DEFENDANTS CITY OF PHILADELPHIA AND MICHAEL FAHY**

Plaintiff Rikkendo Beard, by and through his undersigned attorneys, opposes the Motion to Dismiss filed on behalf of Defendant City of Philadelphia. For the reasons set forth in the accompanying Brief, Mr. Beard respectfully requests that this Court deny the Motion and enter an Order directing Defendant City of Philadelphia to file an Answer to his Complaint within twenty (20) days.

    Respectfully Submitted,

    WEIR LLP

DATE: April 17, 2025

    [signature]
    Alan L. Yatvin, Esquire
    Gabrielle Turley, Esquire
    1339 Chestnut Street, Suite 500
    Philadelphia, Pennsylvania 19107
    T: 215-665-8181 / F: 215-665-8464
    *Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RIKKENDO BEARD | : |
| *Plaintiff,* | : CIVIL ACTION |
| | : NO. 25-cv-1436-JHS |
| v. | : |
| CITY OF PHILADELPHIA, et al., | : |
| *Defendants.* | : |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT
CITY OF PHILADELPHIA'S MOTION TO DISMISS THE COMPLAINT**

**Introduction**

Rikkendo Beard sustained severe injuries while he was clearly experiencing a mental health crisis in Intake at Curran Fromhold Correctional Facility. His injuries were at the hands of the individual Defendants who employed unreasonable force on Mr. Beard. The City of Philadelphia (hereinafter "The City") had knowledge of instances of these individual Defendants exercising unreasonable force in the past and failed to take any steps to ensure unreasonable force was not continued to be deployed.

**Factual History**

**January 2023 Assault on Mr. Beard**

On or about January 28, 2023, Mr. Beard was in a car accident. He was taken to the hospital after which he was released to the police and subsequently charged with Driving Under the Influence (DUI). *See* Plaintiff's Complaint, [ECF Doc. No. 1-2](#) at ¶13. Mr. Beard arrived at Curran Fromhold Correctional Facility ("CFCF") on January 28, 2023, following preliminary arraignment. *Id* at ¶14. Per internal CFCF medical records, while in intake at CFCF, Mr. Beard

1

exhibited "obvious mental health issues" and was "shouting unrealistic ideas and bizarre thoughts and behaviors". *Id* at ¶15. In response to Mr. Beard's obvious mental health crisis, Correctional Officer Ford and Sergeant Ryans, and Defendants John/Jane Doe violently punched, kicked, and struck Mr. Beard and covered his face in a "spit mask" which the officers repeatedly sprayed with OC spray while continuing to assault him. The mask soaked in OC spray prevented Mr. Beard from breathing and held the OC spray in contact with his eyes. *Id* at ¶16. Defendants Ford, Ryans, and Defendants John/Jane Doe (collectively the "Correctional Officer Defendants") kicked and punched Mr. Beard violently in the ribs, face, head, arms and legs while Mr. Beard was handcuffed and wearing the spit mask and unable to defend himself or move away from the blows. The January 2023 Assault took place over an extended period of time during which Mr. Beard received no treatment for his ongoing mental health crisis. *Id* at ¶ 18. During these events, Mr. Beard did not engage in any activity warranting the use of force. *Id* at ¶ 19. On January 31, 2023, Mr. Beard was admitted to Jefferson Health Northeast, Torresdale Hospital ("Jefferson-Torresdale") for "acute encephalopathy and leukocytosis" resulting from the unreasonable force inflicted on him by the correctional defendants and their deliberate indifference to his serious medical needs. *Id* at ¶20.

Mr. Beard's medical records from Jefferson-Torresdale note that he was arriving from the Philadelphia Prison system "after an assault yesterday". *Id* at ¶ 21. The discharge paperwork from Mr. Beard's hospital visit states, "you were in the hospital after an assault in prison leading to confusion". *Id* at ¶ 22. Mr. Beard's Jefferson-Torresdale medical records note "conjunctivitis of both eyes" from the Correctional Officer Defendants' repeated attacks with OC spray, "enzyme leak from muscle injury", "concussion with unknown loss of consciousness status", "traumatic rhabdomyolysis", and "obvious facial trauma". Mr. Beard was also noted to be "nonverbal", exhibiting "poor insight judgment", making nonsensical statements such as repeatedly asking

2

"who is an Eagles fan", and "attempting to rip off [his] blood pressure cuff". *Id* at ¶ 23

Mr. Beard was prescribed and given Risperdal, an antipsychotic medication, while at Jefferson-Torresdale because he remained in a state of confusion for several days after his admission. *Id* at ¶ 24. On or about February 5, 2023, Mr. Beard was transported back to CFCF from Jefferson-Torresdale. *Id* at ¶ 25. Upon arrival to CFCF, Mr. Beard was kept in solitary confinement/lockdown in a cell block called "A13". *Id* at ¶ 26. The Correctional Officers stationed in A13 had been present during the January 2023 Assault. *Id* at ¶ 27.

As a result of the January 2023 Assault, Mr. Beard suffered severe back pain, a concussion, he could not see, and he sustained a rib injury, the results of these injuries continue to this day and will continue in the future. He also suffered bruising and pain in his torso, arms, legs, face and neck as well as emotional distress. *Id* at ¶ 28.

**Correctional Officer Defendants Have a Known History of Using Unreasonable Force**

The January 2023 Assault on Mr. Beard was not the first time the Correctional Officer Defendants had violently assaulted an individual incarcerated at CFCF. In the early morning of March 11, 2021, Defendants Ford and Ryans, along with several other correctional officers physically assaulted Leo Hollis, punching him in the face, slamming him to the ground, kicking him, and eventually placing him in a chokehold until he lost consciousness. Like Mr. Beard, Mr. Hollis was in the holding cell of the CFCF intake room during this assault. *Id* at ¶ 29. In March 2023, Mr. Hollis filed suit for his injuries arising from the above-described assault, naming as defendants the City of Philadelphia, Commissioner Blanche Carney, Former Warden Nancy Gianetto, Correctional Officer Orville Ford, Sargeant Aisha Ryans, and the other officers directly involved in the assault (the "Hollis Lawsuit"). *Id* at ¶30.

3

On October 23, 2021, Omar Dennis, while in custody at CFCF, was violently assaulted by Defendant Ford who struck Mr. Dennis in the back of the head repeatedly with a hard and/or metal object. *Id* at ¶ 31. Mr. Dennis sustained lacerations and permanent scarring as a result of this assault. *Id* at ¶ 32. Defendant Ryans observed Defendant Ford's assault on Mr. Dennis, failed to intervene, and deployed OC spray against Mr. Dennis while he was being held and subdued by Defendant Ford and another correctional officer. *Id* at ¶ 33.

In August 2022, Mr. Dennis filed suit for his injuries arising from the above-described assault, naming as defendants Correctional Officer Orville Ford, Sargeant Aisha Ryans, the other officers directly involved in the assault, and Edwin Cruz, the then-current Deputy Warden at CFCF (the "Dennis Lawsuit"). *Id* at ¶34. Mr. Dennis's complaint includes dozens of still images from surveillance video capturing the October 23, 2021, assault. *Id* at ¶35.

### **Denial of Medical Care and Abuse of Mr. Beard by Defendant Abel**

The DUI charges against Mr. Beard were ultimately withdrawn and he was released from CFCF. *Id* at ¶ 36. In or around January 2024, Mr. Beard was arrested on charges unrelated to his January 2023 arrest and was held at CFCF while awaiting trial. *Id* at ¶37. Mr. Beard was acquitted of those charges on February 5, 2025 and released from custody. *Id* at ¶ 38. On April 23, 2024, while Mr. Beard was incarcerated on block B24 in CFCF, he heard Defendant Correctional Officer Ajeenera Abel instruct four other inmates to assault Mr. Beard. *Id* at ¶ 39. These four inmates attacked Mr. Beard in the middle of the block and stabbed him in his back with a small sharp object. *Id* at ¶ 40. Mr. Beard was denied medical treatment in response to this assault. *Id* at ¶ 41. Correctional officers instead sprayed Mr. Beard with OC spray, and he was taken to medical to be "decontaminated" from the use of OC spray. *Id* at ¶ 42.

Mr. Beard was again confined to A13—solitary confinement—because Defendant Abel falsely alleged that he had given her a note offering her money in exchange for smuggling a phone into CFCF. *Id* at ¶ 43. Defendant Abel never showed the alleged note to Mr. Beard. *Id* at ¶44.

### Subsequent Abuse of Mr. Beard - Assault and Denial of Food

Mr. Beard informed the following Correctional Department staff of the January 2023 Assault: Lt. Crawford, Sgt. Crawford, Sgt. Kilson, CO Watson, CO Henderson, Lt. Reed, Lt. Miles, Sgt. Matthews, and Lt. Racki. *Id* at ¶45. On or about July 25, 2024, Mr. Beard was in his cell when several correctional officers entered. They were not carrying a jumpsuit, meaning they had no intention of taking Mr. Beard out of his cell but only intended to intimidate him while he was in his cell. *Id* at ¶ 46. The officers sprayed Mr. Beard with OC Spray and dragged him across the floor of his cell causing new rib and back pain in addition to the ongoing pain from the January 2023 assault and requiring Mr. Beard to undergo an injury check at CFCF internal medical. *Id* at ¶ 47. On or about July 23, 2024, Mr. Beard again spoke to a medical provider Marshall Onyinye, CRNP, —at CFCF's internal medical services about the January 2023 Assault. *Id* at ¶ 48. On or about August 14, 2024, Mr. Beard was released from A13 and taken to block C22. *Id* at ¶ 49. Once on C22, Mr. Beard delivered a memo to Sgt. Kilson requesting to go to protective custody because he did not feel safe due to the history of assault and abuse by CFCF staff. *Id* at ¶ 50. Sgt. Kilson sent Mr. Beard to CFCF's Mental Health services to speak to a mental health provider. *Id* at ¶ 51. Mr. Beard was referred by CFCF Mental Health to the PDP's Prison Health Services Wing ("PHSW"). *Id* at ¶ 52. While at PHSW, Mr. Beard was held in the receiving room and denied food for several days. *Id* at ¶ 53. On October 4, 2024, agents from the FBI interviewed Mr. Beard about the January 2023 Assault. *Id* at ¶ 54. Mr. Beard was transferred to PICC immediately after his

interview with the FBI. *Id* at ¶ 55. The FBI agents who interviewed Mr. Beard stated that they had surveillance video footage of the January 2023 Assault. *Id* at ¶ 56. As a direct and proximate result of the actions of Defendants described herein, jointly and severally, Mr. Beard suffered and will suffer damages in the form of past and future physical pain and suffering; past and future fear, mental anguish, and emotional distress; violation of his right to be free of unnecessary force; violation of his right to free speech; denial of necessary medical care; expenses from future medical care. *Id* at ¶ 57.

**Question(s) Presented**

1. Whether the City of Philadelphia's Motion to Dismiss Plaintiff's Complaint should be denied where Plaintiff sufficiently pled the City of Philadelphia's custom of providing insufficient care to prisoners experiencing a mental health crisis led to Mr. Beard's injuries as a result of the assault.

   Suggested Answer: *Yes*.

2. Whether the City Philadelphia's Motion to Dismiss Plaintiff's Complaint should be denied where Plaintiff sufficiently pled the City of Philadelphia's failure to train Defendants led to Mr. Beard's injuries as a result of the multiple assaults against him.

   Suggested Answer: *Yes*.

3. If the Court finds the City Philadelphia's Motion to Dismiss Plaintiff's Complaint should be granted, whether Plaintiff should be granted leave to file an amended complaint.

   Suggested Answer: *Yes*.

**Legal Standard**

The inquiry courts must engage in when deciding a Motion to Dismiss pursuant to Rule 12(b)(6) is well-settled: "Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. The inquiry is not

whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215–16 (3d Cir. 2002)); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (holding that a on a motion to dismiss, a reviewing court must "assume all…factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them"). "Generally, in ruling on a motion to dismiss, the court relies on the complaint, exhibits attached to the complaint, and matters of public record, including other judicial proceedings." *Kane v. Chester Cnty. Dep't of Child., Youth & Fams.*, 10 F. Supp. 3d 671, 680 (E.D. Pa. 2014).

"In evaluating the propriety of the dismissal, [courts] accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*,[1] '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—that the pleader is entitled to relief.' This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

To be clear, this inquiry "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

reveal evidence of' the necessary elements." *Phillips*, at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**Argument**

### A. Mr. Beard has Sufficiently Pled the City of Philadelphia has a Custom of Providing Inadequate Care to Individuals Experiencing a Mental Health Crisis in CFCF to Survive The City's Motion.

"[A] claim that the municipality's unconstitutional [policy] or custom led to the plaintiff's injuries—can by proven by showing either that (1) the municipality's policy or custom itself violates federally protected rights or (2) the policy or custom was the 'moving force' behind a municipal employee's deprivation of federally protected rights." *Chambers v. City of Philadelphia*, 2024 WL 870574, at *4 (E.D. Pa. Feb. 29, 2024) (citing *Thomas v. Cumberland Cnty,* 749 F.3d 217, 222 (3d Cir. 2014)). "A 'custom' is a 'given course of conduct, although not specifically endorsed or authorized by law, [that] is so well-settled and permanent as virtually to constitute law.' *Id.* Citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).

The City argues Mr. Beard has failed to plead sufficient facts to establish a pattern for purposes of municipal liability. Specifically, The City contends Mr. Beard citing to two previous lawsuits which included similar claims against the individual Defendants is insufficient to establish a pattern of conduct because of the manner in which those prior cases were disposed. The City is mistaken. Mr. Beard is not citing those cases for their outcomes, but for their source as evidence and knowledge of prior similar conduct involving some of the instant individual Defendants. It is not the prior lawsuits, *per se*, that establishes Mr. Beard's *Monell* claim against the City, it is the conduct from which those suits arose.

The City argues Mr. Beard cannot rely on the *Hollis* Lawsuit to create a pattern because the unopposed motion for summary judgment (the City filed no motion to dismiss) was granted as

8

to the City of Philadelphia, then Prisons Commissioner Balance Carney and Orville Ford, also a defendant in this action.

First, the unopposed summary judgment was only entered on one count as to Aisha Ryans, also a defendant in this action. *See* Order entered 2/14/24 (23-cv-00895 ECF Doc. 32), attached as Exhibit "A". As to the City, Carney and Defendant Ford, no findings were made, and no reasoned opinion was issued. Likewise, the burden on summary judgment is far greater than the motion to dismiss which does not have "a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips*, *supra*. It is also relevant to note that the City's argument in the *Hollis* summary judgment motion was predicated, in part, upon the assertion that, after discovery, "Plaintiff cannot point to any evidence regarding the occurrence of an event similar to that which he describes in his Complaint." ECF Doc. 27, at 12.[2]

Second, there is no collateral estoppel effect where, as here, Mr. Beard was not a party to the prior litigation and there was no final judgment, as the City settled the case before trial.[3] The litigation strategy and effectiveness of Hollis's counsel in developing and presenting the *Monell* claims is simply of no moment. What is relevant is that the same officers, were involved in similar conduct. The information gleaned from the *Hollis* Lawsuit accomplishes the very thing that the

---

[2] Page references in ECF filed documents are to the page number in the ECF applied header, not the internal page number of the document.
[3] Our Court of Appeals has identified four standard requirements for the application of collateral estoppel: "'(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.'" (internal citations omitted) *Jean Alexander Cosmetics v. L'Oreal USA*, 458 F.3d 244, 249 (3d Cir. 2006). "We have also considered whether the party being precluded 'had a full and fair opportunity to litigate the issue in question in the prior action,' and whether the issue was determined by a final and valid judgment." (internal citations omitted) *Ibid*.

City complained Hollis was lacking: "point[ing] to any evidence regarding the occurrence of an event similar to that which he describes in his Complaint." ECF Doc. 27, at 12.

They City likewise argues Mr. Beard cannot rely on the *Dennis* Lawsuit to illustrate a pattern because the matter settled prior to trial (there were no preliminary objections or a motion for summary judgment). This argument is silly. A Municipality cannot insulate itself from its ongoing failures and future injuries by paying off its accusers. When it comes to the prior conduct, the fact that the parties settled is, as in *Hollis*, of no moment at this juncture. What is relevant and supportive of Mr. Beard's *Monell* claim is that the *Dennis* lawsuit provides evidence, including photographs of the assault carried out by the individual Defendants. *See* Mr. Beard's Complaint, ECF Doc. No. 1-2 at ¶35; *see also* Complaint filed August 14, 2022, attached as Exhibit "B"[4] The City does not claim the invalidity of such photos, only that they do not create a custom. Again, same individual Defendants, engaging in similar conduct. At this stage, the evidence averred is relevant and sufficient.

Both the *Hollis* and *Dennis* lawsuits assert complaints which stem from the actions of the individual Defendants at the same facility, in the same area of holding cells and intake area. The

---

[4] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." (internal citations omitted) *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). "However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (internal citations omitted) *Ibid*. "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice ... and has relied upon these documents in framing the complaint." (internal citations omitted) *Ibid*. "What is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." (internal citations omitted) *Ibid*. Here, Plaintiff explicitly references the *Dennis* Complaint (attached hereto as Exhibit "B"). *See* Plaintiff's Complaint, ECF Doc. No. 1-2 at ¶35. Furthermore, the City refers to the *Dennis* and *Hollis* Complaints in their motion to dismiss, arguing the reference to those court filings in its motion to dismiss was permitted. *See* City's Memorandum of Law, pg.4 n. 3. As such, the inclusion of the *Dennis* Complaint does not convert this motion to dismiss into a motion summary judgment.

fact that the *Hollis* and *Dennis* cases were settled is irrelevant. There is no caselaw to suggest there needs to be an official finding or favorable outcome of litigation in order to cite prior incidents as evidence of a pattern.

To further support the assertion that Mr. Beard has not presented sufficient threshold evidence of a pattern, the City cites out-of-circuit case law to contend that only three incidents of complaints of unreasonable force cannot create a pattern. Not only are the cases not precedent for this Court, but they do not support the propositions for which the City offers them.

For example, the City relies on *Carter v. District of Columbia,* 795 F.2d 116, 123 (D.C. Cir. 1986)*,* stating the Court in that case held six prior incidents of alleged misconduct over two years did not establish a pattern of excessive force. *See* City's Memorandum of Law, pg. 5. The City woefully misstates the Court's holding in *Carter* and does not provide any context to the decision. The Court did not find sufficient evidence to demonstrate a pattern, "because plaintiffs presented no detail at all on these incidents." *Carter* at 124. The Court further explained they do not suggest "a numerical standard controls the determination of whether incidents of wrong behavior cumulatively show a pattern amounting to a custom or policy. Egregious instances of misconduct, relatively few in number but following a common design, may support an inference that the instances would not occur but for municipal tolerance of the practice in question." *Id*.

The City also cites *Peterson v. City of Fort Worth, Tex.* to further support the assertion that the three instances of unreasonable force cited in this case are not enough to establish a pattern because the Court in *Peterson* did not find a pattern where there were 27 incidents alleged. 588 F.3d 838, 852 (5th Cir. 2009). The Court in *Peterson* explicitly states the 27 incidents, *in the context of this record*, do not suggest a pattern. Emphasis added. *Id*. Furthermore, this was on a motion for summary judgment, not a motion to dismiss. *Id* at 842. The Court qualifies its decision that 27

11

incidents do not suggest a pattern specifically within the context of the record indicating there was a fact specific analysis. This case does not support The City's argument on a motion to dismiss that a few instances could not possibly demonstrate a pattern at this pleading stage.

The City relies on *Jones v. Town of East Haven* for the proposition that four instances of misconduct was not enough to establish a pattern. 691 F.3d 72, 82 (2d Cir. 2012). First and foremost, *Jones* was decided on appeal, *after a trial* where the plaintiff enjoyed the benefit of discovery. *Id* at 82. Additionally, the fact pattern of the four instances over four years did not have any commonality. Conversely, here the fact patterns of the incidents include similar unreasonable force, at the same facility and include common Defendants.

The City further relies on *Giaccio v. New York* to support the argument that these three instances could not establish a pattern. No. 07-3957-cv, 2009 WL 159264, (2d. Cir. January 23, 2009). However, in *Giaccio*, the Court held *on a motion for summary judgment*, that the plaintiff failed to establish a pattern because he only offered four instances where the alleged wrongful conduct (disclosure of drug screening results) *might* have happened. *Id.*

In *Thomas v. City of Philadelphia,* Case No. 17-4196, WL 4039575 *19 (E.D. Pa. August 27, 2019), on a *motion for summary judgment* the City attempted to argue eight incidents of over 2,200 were insufficient to establish a pattern. However, the Court found for the plaintiff in stating a reasonable jury could find there was a pattern based on the supporting evidence of a Philadelphia Inquirer series, eight specific incidents, a reported scandal at the district and deposition testimony from police officers. *Ibid*. In *Thomas*, the Court found for plaintiff on a *motion for summary judgment* because while plaintiff pointed to only eight out of 2,200 incidents, there was enough evidence to establish a pattern. *Id* at *21. This case illustrates not only that there is no numerical

standard to establish a pattern but also that this is not an appropriate issue to be resolved on a motion to dismiss.

The City misapplies the motion to dismiss standard. At this juncture, the inquiry is not whether it is probable Mr. Beard will prevail on his claims; the standard is whether enough facts have been pled to raise a reasonable expectation that discovery will reveal evidence. *Phillips* at 234.

> **B. Mr. Beard has Sufficiently Pled the City of Philadelphia Failed to Train and Discipline the Officers in Handling an Individual Experiencing a Mental Health Crisis to Survive The City's Motion.**

The City argues Mr. Beard does not sufficiently allege a specific deficiency in training or supervision for which the City could be liable. The City's argument is wrong.

A municipality's failure to train, supervise and discipline, or control employees is a separate and distinct basis for liability of the municipal when the failure amounts to deliberate indifference. *Thomas*, 749 F.3d at 223. A pattern of violations puts the municipal decisionmakers on notice that a new program is necessary, and "[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Ibid*.

At this pleadings stage, Mr. Beard has set forth at least two other instances in addition to his own where the individual Defendants have brutally assaulted inmates while at the same facility and in the same area of the facility. This pattern of behavior and the municipal decisionmakers' notice of this pattern which is evidenced by the fact that at two such instances have resulted in litigation has effectively put the City on notice that a new program is necessary.

Furthermore, due to the fact specific inquiry necessary to establish claims against municipalities, "*Monell* liability is generally not amenable to resolution at the pleading stage."

13

*Dvortsova v. City of Philadelphia*, No. 21-0548, 2021 WL 3190515, at *3 (E.D. Pa. July 27, 2021); *see also 3909 Realty LLC v. City of Philadelphia,* No. 21-0030, 2021 WL 2342929, at *4 (E.D. Pa. June 8, 2021). Even with this standard in mind, Mr. Beard has adequately alleged the City's liability permitting him to proceed to discovery.

Mr. Beard alleges with specificity in his Complaint, the City's failure to: (1) have and/or enforce adequate training on how to handle inmates with mental health and medical issues without injuring them; (2) have and/or enforce policies and procedures on how to handle inmates with mental health and medical issues without injuring them and failure to investigate discipline; (3) adequately supervise and/or provide corrective training to officers known and/or credibly alleged to have used unreasonable force against an inmate; and (4) have and/or enforce adequate training for correctional officers on how to respond to an inmate in the midst of a mental health crisis. *See* Plaintiff's Complaint ¶73. The City cites *Connick v. Thompson* stating a claim for municipal liability is "most tenuous" when a plaintiff is establishing municipal liability under a theory of failure to train and discipline. 563 U.S. 51, 61 (2011) (Where the plaintiff brought a claim against a District Attorney's office for failure to train based on a single *Brady* violation. The Court found this violation did not present the "highly predictable" constitutional danger needed to establish a failure to train through "single incident" liability). A further reading of *Connick* states, policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Ibid.*

There have been *at least* two other temporally relevant instances of this kind of assault carried out by the same individual Defendants. Neither of the previous instances has led to a change in the City's approach to training and discipline, including of the specific corrections here, even

14

though its current approach has clearly failed to prevent such constitutionally violative conduct – this equates to deliberate indifference.

Further, the City argues Mr. Beard's claim for failure to train and discipline is akin to the claim in *Torres v. City of Allentown* where a plaintiff attempted to establish municipal liability by asserting failure to train and discipline officers who were accused of excessive force. No. 07-1934, 2008 WL 2600314, at *3 (E.D. Pa. June 30, 2008). However, the Court held the complaint lacked specific allegations referencing the conduct, time, place, and persons responsibility for any official municipal policy or custom and that it failed to specifically demonstrate how the training programs for the police officers were inadequate. *Id* at 5. That is not the case here, Mr. Beard has provided specifics about the conduct, time, place and persons responsible for the unreasonable force which led to his injuries and constitutional violations. See Plaintiff's Complaint ¶73.

The Court further states in *Torres* that "it is imperative that a plaintiff aver some, even if not yet detailed facts to support a claim." *Id*. Here, Mr. Beard has done so. Additionally, in *Harris v. City of Philadelphia*, where there was evidence that there was notice of failures in the training program and a deliberate choice to retain inadequate programs, the Court held the plaintiff had pleaded sufficient facts to assert municipal liability. 171 F.Supp.3d 395, 404 (E.D. Pa. 2016).

Unlike the plaintiff in *Torres* who argued a general lack of training, here, Mr. Beard has offered a detailed recitation of his claim for failure to train and discipline specifically in regard to individuals experiencing a mental health crisis. Comparable to the plaintiff in *Harris*, Mr. Beard has sufficiently pleaded notice and facts to demonstrate that there have been multiple violations of Constitutional rights, with similar conduct, at the same facility, at the hands of some of the same individual Defendants.   Mr. Beard should be permitted to conduct discovery to adduce evidence

15

to determine what training, if any, the individual Defendants received concerning how to treat and handle individuals in their custody who are experiencing a mental health crisis.

      C.      **If The Court Finds The City Philadelphia's Motion To Dismiss Plaintiff's Complaint Should Be Granted, Plaintiff Should Be Granted Leave To File An Amended Complaint.**

Lastly, the Court in *Torres* dismissed the *Monell* claim without prejudice and gave the plaintiff 20 days to amend her Complaint. *Id*. As such, the City's reliance on this case to support its motion for dismissal *with prejudice* is misplaced. *See* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.") *See Cash v. Wetzel*, 8 F.Supp.3d 644, 657-58 (E.D. Pa. 2014) (Where the Court granted plaintiff leave to file a supplemental pleading when further instances of retaliation occurred subsequent to plaintiff filing his second amended complaint). Should the Court find the instant Complaint Deficient, Mr. Beard should be given the opportunity to file an Amended Complaint. In such an amended complaint Mr. Beard would aver, *inter alia*, the assault on Demetrius Jones by corrections officer Ivory Cousins while also in custody at CFCF (as here, another pepper spray assault case)[5] and the assault of Victor Hernandez by former Sgt. Ronald C. Granville and others, while also in custody at CFCF.[6]

In *Hernandez*, the Court granted the City's initial Motion to Dismiss, finding Mr. Hernandez failed to provide sufficient detail to support his contention that the City had a custom of using excessive force.[7] However, the Court gave Mr. Hernandez the opportunity to amend his

---

[5] See *Recent cases against ex-guards provide a rare view of the disorder and violence plaguing Philly's jails*, Philadelphia Inquirer (4/15/25), attached as Exhibit "C".
[6] See *Five Philly corrections officers involved in attack on naked inmate, feds say*, Philadelphia Inquirer (1/10/23), attached as Exhibit "D".
[7] Memorandum Decision entered 06/23/22 (22-cv-00027 ECF Doc. 20) attached as Exhibit "E".

16

Complaint. He filed an Amended Complaint[8] including the twelve prior instances with specific facts to support a claim for municipal liability by establishing a custom, which he did successfully. The Court denied the City's Motion to Dismiss the Amended Complaint, allowing Mr. Hernandez's "custom claim" to go forward based on details in the pleading of twelve prior instances of officers using excessive force on inmates, not in self-defense and causing serious bodily injury.[9] According to the Memorandum, many of those prisoners were housed at CFCF at the time of the assault.

Were his Complaint dismissed, and were he give leave to amend, Mr. Beard would plead the Jones and Hernadez incidents, as well as the incidents set forth in the Hernandez Amended Complaint, in support of his *Monell* claims against the City.

**WHEREFORE**, Plaintiff Rikkendo Beard, prays this Honorable Court deny Defendant City of Philadelphia's Motion to Dismiss and enter an Order in the form attached hereto.

Respectfully Submitted,

WEIR LLP

DATE: April 17, 2025

Alan L. Yatvin, Esquire
Gabrielle Turley, Esquire
1339 Chestnut Street, Suite 500
Philadelphia, Pennsylvania 19107
T: 215-665-8181 / F: 215-665-8464
*Attorneys for Plaintiff*

---

[8] Amended Complaint, (22-cv-00027, ECF Doc. 23) attached as Exhibit "F".
[9] Memorandum Decision entered 09/19/22 (22-cv-00027 ECF Doc. 41), attached as Exhibit "G."

17

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RIKKENDO BEARD, | : | |
| | : | |
| *Plaintiff,* | : | CIVIL ACTION |
| | : | NO. 25-cv-1436-JHS |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| *Defendants.* | : | |

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of the foregoing filings to be provided by ECF to all counsel of record in this matter on this date.

DATE: April 17, 2025

Alan L. Yatvin, Esquire