# Exhibit F

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Victor Hernandez <br> 4840 N. 8th Street <br> Philadelphia, PA 19120 | : <br> : <br> :    TRIAL BY JURY DEMAND <br> : |
| Plaintiff. | :    CIVIL ACTION NO. <br> : |
| v. | : <br> : |
| City of Philadelphia <br> 1515 Arch Street <br> Philadelphia, PA 19102 | : <br> : <br> : <br> : |
| Blanche Carney <br> Commissioner of the <br> Philadelphia Prisons Department <br> 1515 Arch Street <br> Philadelphia, PA 19102 | : <br> : <br> : <br> : <br> : <br> : |
| Karen Butler <br> Deputy Warden CFCF <br> 1515 Arch Street <br> Philadelphia, PA 19102 | : <br> : <br> : <br> : <br> : |
| Robert Rose <br> Deputy Warden CFCF <br> 1515 Arch Street <br> Philadelphia, PA 19102 | : <br> : <br> : <br> : <br> : |
| Jaheen Andrews <br> 1515 Arch Street <br> Philadelphia, PA 19102 | : <br> : <br> : <br> : |
| Mamin Hart <br> 1515 Arch Street <br> Philadelphia, PA 19102 | : <br> : <br> : <br> : |
| O'Neil Murray <br> 1515 Arch Street <br> Philadelphia, PA 19102 | : <br> : <br> : <br> : |

1

| | |
|---|---|
| Sergeant Granville | : |
| 1515 Arch Street | : |
| Philadelphia, PA 19102, | : |
| | : |
| and | : |
| | : |
| CO Reese | : |
| 1515 Arch Street | : |
| Philadelphia, PA 19102 | : |
| | : |
| Defendants. | : |

## FIRST AMENDED COMPLAINT

Plaintiff by and through his attorney Brian J. Zeiger, Esquire, hereby alleges the following:

## JURISDICTION & VENUE

1. Plaintiff alleges civil rights violations under 42 U.S.C. § 1983 and this Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

2. Defendants reside in the Eastern District of Pennsylvania and venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3. At all times relevant hereto the Plaintiff Victor Hernandez is an adult resident of Pennsylvania who lives at 4840 N. 8th Street, Philadelphia, PA 19120.

4. Defendant City of Philadelphia, doing business at 1515 Arch Street, Philadelphia, PA 19102 is a municipality, duly organized and existing under the laws of the Commonwealth of Pennsylvania.

5. Defendants Carney, Butler, and Rose are believed to be an adult citizens of

Pennsylvania conducting business at One Parkway, 15th Floor, 1515 Arch Street, Philadelphia, PA 19102, Defendants Carney, Butler, and Rose are being sued in their official capacity only.

6. Defendants Andres, Hart, Murray, Granville, and Reese, are believed to be adult citizens of Pennsylvania conducting business at 1515 Arch Street, Philadelphia, PA 19102. The Defendants are believed to be corrections officers and are being sued in their individual capacity, hereinafter referred to as the "individual defendants".

7. At all times material hereto, the defendant corrections officers acted under color of law and within the course and scope of his employment, pursuant to the customs, policies, practices, ordinances, regulations, and directives of the City of Philadelphia.

## FACTUAL BACKGROUND

8. On or about October 6, 2020, Plaintiff was an inmate at the Curran Fromhold Correctional Facility (herein after "CFCF"), when he was attacked by the individual Defendants, who at the time were acting as corrections officers for the Defendant the City of Philadelphia.

9. On October 6, 2020, Plaintiff was an inmate at the CFCF when a dispute between inmates in his pod occurred regarding the telephone system.

10. As a result of the abovementioned fight, Plaintiff was removed from the pod and taken to a new pod.

11. In the new pod, Plaintiff was locked-in his cell.

12. While locked-in to his new cell, Defendant Andrews came into Plaintiff's cell and told Plaintiff he was there to strip search Plaintiff.

13. Defendant Andrews ordered Plaintiff to strip off his clothing–Plaintiff complied.

3

14. After Plaintiff was naked, the four other individual Defendants entered Plaintiff's new cell.

15. Defendants Andres, Hart, Murray, Granville, and Reese beat Plaintiff.

16. As a result of the beat-down, Plaintiff suffered a ruptured testicle, a blood clot in his testicle, and an enlarged scrotum with approximately one liter of fluid and blood.

17. Further, Plaintiff suffered a rib fracture and a facial wound at or near his eye.

18. Plaintiff was transported to a nearby hospital, where he was taken immediately to surgery to repair his testicle.

19. Based upon information and belief, Plaintiff believes the beating was captured on video, though the camera angle is partially obstructed.

20. To cover their heinous behavior, the Defendants Andres, Hart, Murray, Granville, and Reese made up some type of violation against Plaintiff that caused Plaintiff to be moved to the hole once he was returned from the hospital.

21. Plaintiff's scrotum is permanently injured and scarred as a result of the incident.

22. Defendants Andres, Hart, Murray, Granville, and Reese were not properly trained and/or supervised how to transfer and relocate and inmate at the CFCF by the Defendant City of Philadelphia.

23. More outrageously, based upon information and belief, Defendant Granville is a supervisor for the Defendant City of Philadelphia.

24. At the time of the incident, Defendants Carney, Butler, and Rose were directly involved in creating and enforcing policy at the CFCF regarding inmate discipline, movement, classification, safety, and search of the person.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

25. At the time of the incident, Defendants Carney, Butler, and Rose, were responsible for training and supervising Defendants Andres, Hart, Murray, Granville, and Reese regarding prisoner discipline, movement, classification, safety, and searches of the person; yet, they failed to properly train and supervise Defendants Andres, Hart, Murray, Granville, and Reese.

26. The Defendant City of Philadelphia has been sued on a myriad of occasions for corrections officers beating inmates as evinced on this Court's ecf and the equivalent Philadelphia County efiling system, yet the Defendant City of Philadelphia still does not properly train and supervise corrections officers regarding the use of force on inmates.

    a. In September 2014, CFCF corrections officer Tyrone Glover beat inmate, Marcellus Temple, in plain view of prison visitors, but was neither terminated nor disciplined. The next year, in October 2015, Glover was once again captured on CFCF's security cameras striking an inmate, John Steckley, in the face several times with a closed fist following a verbal altercation. Glover was not immediately terminated, but resigned so he would not be criminally charged.

    b. In October 2014, CFCF corrections officer, James Weisback, repeatedly punching an inmate, Jonathan Akubu, in the face fifteen (15) times with a closed fist while the Akubu was handcuffed. The matter was captured on video. Officer Weisback received a brief suspension for using excessive force and was transferred to different unit.

    c. In May 2015, CFCF corrections officer, Larry Levy, struck inmate Victor Henderson in the back of the head nine (9) times, kicking him in the back of the leg,

    throwing him to the ground, stepping on his head, punching him while he was on the ground, and pepper spraying him in the face. The matter was captured on video. Levy was convicted of simple assault.

d. In June 2016, Corrections Officers Milton Gibbs and Terrance Bailey took an inmate at the Philadelphia Prison System, Brandon Kulb, out of his cell, handcuffed him, walked him the exit, then struck Kulb in the back of the head which knocked him to the ground. Officers Gibbs and Bailey proceeded to drag Kulb to the central control area and began to stomp on him. Officer Shaun Lowe then arrived and joined the assault. The assault was captured on video and lasted nearly 10 minutes with Kulb losing consciousness at least twice. Gibbs and Bailey submitted a fake mental health referral for Kulb alleging that he intentionally harmed himself in an effort to cover up their wrongdoings. Officer Lowe transported Kulb to a receiving room where Officer Gibbs attempted to coerce him not to report the assault in exchange for food. All three Officers submitted written reports that omitted the assault. The guards were arrested for their conduct. Officer Gibbs was sentenced to a jail term between 45 days and 23 months, 4 years' probation, and was required to attend anger management counseling and provide community service. Officer Bailey accepted a guilty plea and was sentenced to 3 years' probation. Officer Lowe kept his job and was sent to a diversion program for his role in obstructing the investigation. Laughably, Gibbs had a previously beat inmates. Gibbs was arrested in 1989 for choking a juvenile in custody in Bucks County, was the subject of a 2004 assault of an inmate in a Philadelphia men's jail and was the subject of other

disciplinary complaints including a 2012 allegation that he grabbed a female inmate at Philadelphia's Riverside Correctional Facility by the hair and dragged her down a hall.

e. In December 2016, a transgender inmate was pepper-sprayed in the face 4 times by Officer Monique Jones at the direction of Sergeant Nakia Anderson at Riverside Correctional Facility while he was handcuffed in his cell. None of the officers involved in this incident were terminated.

f. On October 25, 2018, Michael Battersby was an inmate at the Philadelphia Prison System. Battersby was in a special unit for inmates in recovery who were very frail. In the unit, every morning after breakfast, every inmate was given a protein shake to help them stay hydrated and put on weight. At that time, corrections officer Rynell Hovington was handing out the shakes and had an argument with Battersby. Hovington beat Battersby with his fist and shattered Battersby's jaw in two places. Hovington walked off the job immediately after the beatdown, feigning a headache. Battersby was transported to a nearby hospital where his jaw was wired shut. Hovington returned to work the next day and was never disciplined for the incident.

g. On December 17, 2018, David Overton was an inmate in the Philadelphia Prison System when he was beat by corrections officer Bruce. After the beating, Plaintiff was transferred to a nearby hospital, treated for a broken jaw, and had his jaw wired shut. Sergeant Q. Thomas was present during the altercation, reprimanded Bruce in front of David Overton, but did not discipline Bruce with any further punishment.

h. In May 2019, two CFCF corrections officers, Robert Berger, and Nathanial Morris,

      were arrested by the FBI for attacking an inmate, Lamar Rozier, by punching and kicking him multiple times even though he was compliant and not posing a physical threat to them or anyone else; Rozier did not even attempt to fight back. The two corrections officers were also charged with filing false statements after excluding details of their assault from their incident reports. While both were found not guilty in criminal court, the City of Philadelphia still has not terminated Berger or Morris.

i. On August 26, 2019, Jose Lopez was an inmate at the CFCF. Lopez suffered from severe mental health problems. Lopez urinated on the floor in his cell. Lopez was removed from his cell and transported to a private area at the CFCF and placed naked into a restrictive smock so he could not use his hands. Corrections officers Reese, Fitzroy Williams, Anthony Shorts, Aisha Ryans, Grogan George, and Tyrone Rodriguez, beat him. As a result of the beating, Lopez was transported to a nearby hospital where he was treated for a fractured orbital socket and fractured jaw. One of the abovementioned guards was disciplined for the being the lookout during the beatdown, which was described as "leaving their post." None of the other guards were disciplined.

j. On July 16, 2021, corrections officers Jean Castor and Terrel Felts beat, violently punched, and kicked an inmate in the Philadelphia Prison system, at the CFCF. After the beating, Castor used a hand held radio issued by the prison system to beat the inmate in the face. Video of the incident shows other corrections officers attempting to pull Castor and Felts off the inmate while the inmate lay prone and motionless on the ground. *See McClennan v. City of Philadelphia*, et al., 2:21-cv-04948-KSM.

    k. On or about April 15, 2022, Juan Ayala Rivera was an inmate in the Philadelphia prison system when he had an argument with a female corrections officer Harris. After the argument was completed, Rivera went back to his cell. Moments later a male corrections officer Harris removed Rivera from his cell, slapped and punched him in the face. The male Harris moved Plaintiff to a private area and punched and kicked Rivera. As a result of the beat down, Rivera was transported to the hospital because blood was running from his ear—he is now deaf in that ear.

27. Defendants Carney, Butler, and Rose were the policymakers for the Defendant City of Philadelphia, and were aware of all of the constitutional violations in the City's inmate population as set forth above, yet the Defendants Carney, Butler, Rose, and the City of Philadelphia still maintain an inadequate screening policy of corrections officers.

28. Defendants Carney, Butler, Rose, and the City of Philadelphia have a long and distinguished history of inadequate screening policies which amount to deliberate indifference which are directly related to the deprivation of Plaintiff's Constitutional rights.

## COUNT I - EXCESSIVE FORCE - 42 U.S.C. § 1983

## DEFENDANTS ANDRES, HART, MURRAY, GRANVILLE, AND REESE

29. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

30. Plaintiff believes and therefore avers that the force used upon him was unnecessary and more force than was reasonable and necessary under the circumstances.

31. Plaintiff believes and therefore avers that Defendants, acting in concert and conspiracy

with each other, have by the aforementioned actions deprived Plaintiff of his constitutional and statutory rights.

32. Defendants' actions were a factual cause of and/or caused Plaintiff's substantial damages and harm. (See above).

**WHEREFORE**, Plaintiff demands judgment against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of Two Hundred Twenty Five Thousand ($150,000.00) Dollars together with delay damages, interest, costs and attorneys' fees and punitive damages.

## COUNT II –
## MONELL CLAIM UNDER 42 U.S.C. § 1983
## DEFENDANT CITY OF PHILADELPHIA

33. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

34. Defendant City of Philadelphia, through its prisons department, established, knew of, and acquiesced to policies, procedures, and customs that Defendants knew or should have known would lead to violations of citizens' constitutional rights.

35. The decision makers of the City of Philadelphia, who made, enforced, or turned a blind eye, to the defective policies, procedures, and customs including but not limited to the head of the prison system, the mayor, and the individual defendants direct supervisors on the night in question.

36. Defendant City of Philadelphia, through its prisons department, acted with deliberate indifference to the consequences when establishing and enforcing inadequate policies,

procedures, and customs.

37. Defendant City of Philadelphia, through its prisons department, did not properly establish a policy regarding car stops and seizures.

38. Defendant City of Philadelphia, through its prisons department, did not properly establish a policy regarding inmate housing.

39. Defendant City of Philadelphia, through its prisons department, did not properly establish a policy regarding if and when a corrections officer can strip search an inmate.

40. Defendant City of Philadelphia, through its prisons department, did not properly establish a policy regarding videotaping their prison facility.

41. Most outrageously, the deliberate indifference to the safety of inmates, or lack there of, is so pervasive throughout the Philadelphia Prison System, in this case, a supervisor for the City of Philadelphia took part in beating Plaintiff.

42. Defendant City of Philadelphia, through it police department, did not properly train its prison corrections force to be in constant communication with the supervisors to avoid the type of matter as laid herein.

43. Defendant City of Philadelphia, through it prisons department, did not properly train its prison corrections force to properly activate, employ, and save video footage from the prison.

44. The Plaintiff believes and therefore avers the Defendant City of Philadelphia, has adopted and maintained for many years, a recognized and accepted policy, custom and/or practice of systematically failing to properly train, investigate, supervise and discipline its employees, including the individual Defendants, regarding individuals' rights under the Fourth

Amendment, Eighth Amendment and Fourteenth Amendment of the Constitution of the United States.

45. Defendant City of Philadelphia, knew or should have known that its employees engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff, and that they deliberately, knowingly and intentionally failed to take measures to stop or limit the policy, custom and practice and therefore acquiesced in, and were deliberately indifferent to, the aforementioned unconstitutional conduct and policy.

46. By failing to take action to stop or limit the policy and/or custom and/or practice by remaining deliberately indifferent to the systematic abuse which occurred in accordance with and as a direct and proximate result of the policy, Defendant City of Philadelphia condoned, acquiesced in, participated in, and perpetrated the policy in violation of the Plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania.

47. The conduct of Defendant City of Philadelphia and/or the conduct of defendants' employees or agents, and/or policy maker for the Defendant City of Philadelphia, were a factual cause of and/or the cause of the harm and damages sustained by Plaintiff.

48. The City hired the individual Defendants in this matter as corrections officers without first adequately screening their background as a proximate result of its inadequate screening policies.

49. The City's inadequate screening policies amount to deliberate indifference and led directly to the deprivation of Plaintiff's Constitutional rights and were the proximate cause of Plaintiff's injuries. .

Plaintiff demands he be compensated for injuries in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars together with delay damages, interest, costs, attorneys' fees, and declaratory and injunctive relief.

## COUNT III - VIOLATION OF CIVIL RIGHTS-42 U.S.C. § 1983

## PLAINTIFF V. DEFENDANTS DEFENDANTS CARNEY, BUTLER, AND ROSE

50. Plaintiff incorporates the preceding paragraphs above as though fully set forth herein at length.

51. Defendants Carney, Butler, and Rose, failed to have an adequate policy in place governing police pursuits for their officers; they failed to properly train their officers in the use of force at the prisons; and they failed to properly supervise the individual Defendants, before and during the aforementioned excessive use of force, thereby violating decedent's rights under the laws of the Constitution of the United States of America, in particular, the Fourteenth Amendment, their rights under 42 U.S.C. §1983.

52. Defendants Carney, Butler, and Rose negligently and unnecessarily with deliberate indifference created a dangerous situation, thereby directly causing serious injury to the Plaintiff, which is a violation of his rights under the law and the Constitution of United States of American and in particular, the due process clause of the Fourteenth Amendment and their rights under 42 U.C.S. §1983.

53. As a direct and proximate result of the aforesaid acts of Defendants Carney, Butler, and Rose, which were committed under color of their authority for the City of Philadelphia, the decedent suffered grievous bodily injury which is a violation by said Defendants of the laws and

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

the Constitution of the United States of America, in particular, the Eighth and/or Fourteen Amendment to the United States Constitution and 42 U.S.C. §1983, which makes said Defendants liable to the Plaintiff.

54. The acts committed by Defendants Carney, Butler, and Rose, with deliberate indifference and constituting a state created danger caused the previously described injuries to the Plaintiff in violation of his constitutional rights as previously set forth in the aforementioned paragraphs.

55. Defendants Carney, Butler, and Rose, in their supervisory capacity over the individual Defendants, as set forth above and based upon their knowledge of other prior misconduct of the individual Defendants pertaining to their use of force with inmates at the Philadelphia Prison System, and their failure to discipline or properly train the individual Defendants prior to the instant matter, which is an acquiescence to the individual Defendants violation of the Plaintiff's rights.

56. Defendants Carney, Butler, and Rose, in their roles as policymakers for the City of Philadelphia Prison System, with deliberate indifference to the consequences, established, implemented and maintained a policy or custom of inadequate training and therefore caused the individual Defendants to use excessive force against Plaintiff, which directly caused the constitutional harm to the decedent.

WHEREFORE, Plaintiff demands judgment for compensatory damages against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Million ($1,000,000.00) Dollars together with delay damages, interest, costs, attorneys' fees, and declaratory and injunctive relief.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

Respectfully submitted,

<u>/s Brian J. Zeiger</u>
BRIAN J. ZEIGER, ESQUIRE
Identification No.: 87063
zeiger@levinzeiger.com
LEVIN & ZEIGER, LLP
1500 JFK Blvd, Suite 620
Philadelphia, Pennsylvania 19102
215.546.0340