# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR HERNANDEZ, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF PHILADELPHIA, *et al.*, <br><br> Defendants. | CIVIL ACTION <br><br> NO. 22-0027-KSM |

## MEMORANDUM

**MARSTON, J.**                                                            September 19, 2022

      Plaintiff Victor Hernandez was brutally beaten by four corrections officers ("COs") and a sergeant while incarcerated at Curran-Fromhold Correctional Facility ("CFCF") and suffered serious injuries. (Doc. No. 23 ¶¶ 8–17.) Hernandez brings claims against CO Jaheen Andrews, CO Mamin Hart, CO O'Neil Murray, CO Reese, and Sergeant Granville[1] (collectively, the "CO Defendants") under 42 U.S.C. § 1983, alleging that they violated his constitutional right to be free from excessive force by beating him. (*Id.* ¶¶ 29–32.) Hernandez also seeks to hold the City of Philadelphia (the "City") liable under a theory of municipal liability. (*Id.* ¶¶ 33–49.) And he seeks to hold Blanche Carney, the Commissioner of the Philadelphia Prisons Department ("PPD"), and Karen Butler and Robert Rose, Deputy Wardens at CFCF (collectively, the "PPD Defendants") liable under a theory of supervisory liability. (*Id.* ¶¶ 50–56.)

      Presently before the Court are the City's and the PPD Defendants' motions to dismiss. For the reasons below, both motions are denied.

---

[1] The Amended Complaint does not identify CO Reese's or Sergeant Granville's first names. (*See* Doc. No. 23 ¶ 5.)

## I. BACKGROUND

### A. *Factual Background*

Accepting the allegations in the Amended Complaint as true, the relevant facts are as follows.

Hernandez was incarcerated at CFCF. (*Id.* ¶ 8.) On October 6, 2020, he got into a fight with other inmates in his pod over the use of telephones. (*Id.* ¶ 9.) In the aftermath of the fight, he was relocated to a different pod and "locked into" his new cell. (*Id.* ¶¶ 10–11.) Shortly after Hernandez was placed in the new cell, CO Andrews entered Hernandez's cell and ordered a strip search. (*Id.* ¶¶ 12–13.) Once Hernandez disrobed, the four other CO Defendants entered his cell and, together with CO Andrews, viciously beat him.[2] (*Id.* ¶¶ 14–15.)

Hernandez suffered multiple serious injuries from the beating, including a ruptured testicle, a blood clot in his testicle, an enlarged scrotum (which was filled with approximately one liter of fluid and blood), a fractured rib, and a facial wound. (*Id.* ¶¶ 16–17.) He had to be rushed to the hospital to undergo emergency surgery in order to save his testicle. (*Id.* ¶ 18.) Hernandez's scrotum is permanently injured and remains scarred from the incident. (*Id.* ¶ 21.)

After being released from the hospital, Hernandez was returned to CFCF and placed in a cell for prisoners being punished (known as the "hole"),[3] based on a violation the CO Defendants allegedly fabricated. (*Id.* ¶ 20.)

### B. *Procedural History*

In January 2022, Hernandez brought suit against the CO Defendants and the City. (Doc. No. 1.) Hernandez brought claims for excessive force against the CO Defendants and sought to

---

[2] The Amended Complaint does not include any allegations to explain the motive for the beating. (*See generally* Doc. No. 23.)

[3] The term "the hole" is often used to refer to solitary confinement.

hold the City liable under a theory of municipal liability. (*Id.*) The CO Defendants answered the Complaint (Doc. No. 11), and the City moved to dismiss the municipal liability claim (Doc. No. 12). On June 23, the Court granted the City's motion to dismiss but granted Hernandez leave to amend the Complaint. (Doc. No. 20.)

On July 11, Hernandez filed the Amended Complaint. (Doc. No. 23.) The Amended Complaint brings three claims: an excessive force claim against the CO Defendants (Count I), a municipal liability claim against the City (Count II), and a supervisory liability claim against the PPD Defendants (Count III.) (*Id.*) The Amended Complaint also includes allegations detailing twelve prior instances of officers using excessive force on inmates at CFCF. (*Id.* ¶ 26.) The CO Defendants have not responded to the Amended Complaint,[4] the City moves to dismiss the municipal liability claim (Doc. No. 25), and the PPD Defendants move to dismiss the supervisory liability claim (Doc. No. 28). Hernandez opposes the motions. (Docs. No. 26, 29.)

On August 30, the United States of America moved to intervene in this matter pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) and sought a stay pending a criminal investigation into the officers' beating of Hernandez. (Doc. No. 35.) The Court has taken the Government's motion under advisement.

## II.　LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[4] The CO Defendants answered the Original Complaint but have yet to file a responsive pleading to the Amended Complaint. The Court will issue a separate order directing the CO Defendants to file their answer to the Amended Complaint.

3

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although we must accept as true the allegations in the complaint, we are not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). In other words, a "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (cleaned up). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

### III. ANALYSIS

#### A. *The City's Motion to Dismiss*

Hernandez claims the City, through the PPD, "established, knew of, and acquiesced to policies, procedures, and customs" that led to the deprivation of Hernandez's constitutional right to be free from excessive force in violation of 42 U.S.C. § 1983. (Doc. No. 23 ¶¶ 33–49.) Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. A municipality can be held liable under Section 1983 only "when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by them." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Put differently, a municipality "may not be held liable on a theory of vicarious liability rooted in *respondeat superior*," but it may be held liable "when the injury inflicted is permitted under its adopted policy or custom." *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 237

4

(3d Cir. 2013) (citing *Beck*, 89 F.3d at 971).

"[I]n order for a government entity . . . to be liable under § 1983, the plaintiff must identify a policy or custom of the entity that caused the constitutional violation." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2005). "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Mulholland*, 706 F.3d at 237 (citations omitted). A course of conduct rises to the level of "custom" when "though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law." *Id.* (internal quotations omitted).

Hernandez claims the City had custom of allowing officers to use excessive force on inmates and failing to adequately discipline them for doing so. (Doc. No. 23 ¶¶ 26, 34.) The Amended Complaint details twelve[5] instances of officers using excessive force on inmates at CFCF and other PPD facilities over the past eight years:

- In September 2014, CO Tyrone Glover beat an inmate in plain view of prisoners but was not terminated or disciplined.

- In October 2014, CO James Weisback punched an inmate in the face fifteen times while the inmate was handcuffed. CO Weisback was briefly suspended and eventually transferred to a different unit.

- In May 2015, CO Larry Levy struck an inmate in the back of the head nine times, kicked the inmate in the back of the leg, stepped on the inmate's head, punched the inmate, and pepper sprayed the inmate. CO Levy was convicted of simple assault.

- In October 2015, CO Glover struck an inmate in the face with a closed fist. Glover was not terminated but resigned to avoid criminal charges.

- In June 2016, COs Milton Gibbs and Terrance Bailey handcuffed an

---

[5] In his brief opposing the City's Motion to Dismiss, Hernandez says that the Amended Complaint includes eleven examples of similar misconduct in the Philadelphia Prison System, but, by the Court's count, the Amended Complaint includes twelve examples of such misconduct.

- inmate, struck the back of his head, and proceeded to "stomp" on him. The COs were convicted for their conduct.

- In December 2016, CO Monique Jones, acting at the direction of Sergeant Nakia Anderson, pepper sprayed a handcuffed inmate in the face. Neither officer was terminated for this incident.

- In October 2018, CO Rynell Hovington beat an inmate with his fist, shattering his jaw in two places. CO Hovington was not disciplined for this incident.

- In December 2018, CO Bruce[6] beat an inmate, breaking his jaw. CO Bruce was reprimanded but was not further disciplined.

- In May 2019, COs Robert Berger and Nathanial Morris punched and kicked an inmate multiple times, even though the inmate did not fight back. The COs faced charges and were found not guilty; they have not been terminated.

- In August 2019, six COs beat a severely mentally ill inmate, fracturing his orbital socket and jaw. One of the COs was disciplined for abandoning his post, but none of the other COs were disciplined.

- In July 2021, COs Jean Castor and Terrel Felts beat an inmate with a handheld radio. The COs continued to beat the inmate even after he was motionless on the ground.

- In April 2022, an unidentified male CO beat, slapped, punched, and kicked an inmate causing him to lose hearing in one ear.

(*Id.* ¶ 26(a)–(k).) Hernandez contends these examples show that the City "has a long and undistinguished history of lawlessness and excessive force within the prison system," which establishes "[a] custom of a constitutionally defective systemic policy" by the City sufficient to state a claim for municipal liability. (Doc. No. 26 at 9–10.) The City argues that Hernandez pleads only conclusory allegations that "simply parrot the language of a *Monell* claim." (Doc. No. 25 at 7.) The City also contends that the twelve instances Hernandez details are "factually incongruent." (*Id.* at 8.)

---

[6] The Amended Complaint does not identify CO Bruce's first name.

6

We agree with Hernandez. The Amended Complaint does not "simply parrot the language of a *Monell* claim." Rather, it identifies in great detail twelve prior instances of officers using excessive force on inmates within the Philadelphia Prison System, many housed at CFCF. (Doc. No. 23 ¶ 26.) And in many of the cited examples alleged, the officers were not disciplined proportionally to their use of force. (*Id.*) Although the City labels these instances "factually incongruent," they are not; they are all similar to the alleged beating of Hernandez. They all involve an officer (or multiple officers) beating an inmate, not in self-defense, and causing the inmate serious bodily injury. That is exactly what Hernandez claims happened to him.

These allegations that City officers have, at least twelve times in the past eight years, used excessive force on inmates in a similar manner are sufficient to plead that the City's prison department had a custom of permitting officers to use excessive force on inmates. *See Clayton v. City of Newark*, Civ. No. 21-1289 (KM) (ESK), 2021 WL 6062342, at *7 (D.N.J. Dec. 22, 2021) ("The complaint lists seven specific instances of alleged application of excessive force by the [Newark Police Department] which took place between 2008 and 2021. . . . I will permit the 'custom' claim to go forward based on this limited showing."); *Grayson v. DeWitt*, 1:15-cv-0453, 2016 WL 11605699, at *7 (M.D. Pa. Mar. 18, 2016) (holding that the plaintiff stated a *Monell* claim based on custom where he "specifically pled to six prior incidents of excessive force"); *Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731, 743 (E.D. Pa. 2014) (holding that allegations detailing four instances during which the municipality's police officers used excessive force "suffice[d] to state a claim that Upper Darby officers acted pursuant to a municipal custom condoning the use of excessive force during arrests"); *Garey v. Borough of Quakertown*, Civil Action No. 12–799, 2012 WL 3562450, at *6 (E.D. Pa. Aug. 20, 2012) (holding that the plaintiff stated a *Monell* claim based on a custom where he alleged that the

7

municipality failed to train its officers when and how to properly use tasers and alleged "that the officers in the [Borough of Quakertown] have a history of verbal and physical abuse and police brutality toward citizens in circumstances similar to those here").

Because Hernandez has alleged that the City had a custom of permitting officers to use excessive force on inmates, he has stated a clam for municipal liability against the City, and the City's motion to dismiss is denied.

### B. The PPD Defendants' Motion to Dismiss

Hernandez also brings a Section 1983 claim against the PPD Defendants under a theory of supervisory liability. (Doc. No. 23 ¶¶ 50–56.) He alleges that the PPD Defendants are policymakers and acted with deliberate indifference to officers' use of excessive force within the Philadelphia Prison System, which proximately caused the CO Defendants to violate Hernandez's right to be free from excessive force. (*Id.*)

"Section 1983 will not support a claim based on a *respondeat superior* theory of liability." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). Accordingly, an individual defendant can be liable under Section 1983 only if he was personally involved in the actions giving rise to the alleged constitutional harm. *See Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). The Third Circuit has identified two general paths that satisfy the personal involvement requirement and support a claim for supervisory liability. *See A.M. ex rel. J.M.K.*, 372 F.3d at 586. First, where an individual defendant is a policymaker, they may be held liable under Section 1983 if, "with deliberate indifference to the consequences, [they] established and maintained a policy, practice or custom which directly caused the constitutional harm." *Id.* Second, an individual defendant may be held liable under a theory of supervisory liability where they participated in, directed, or

8

had knowledge of and acquiesced to a constitutional violation. *Id.*

Hernandez seeks to hold the PPD Defendants liable as policymakers who have been deliberately indifferent to the repeated instances of excessive force on inmates within the Philadelphia Prison System. (*See* Doc. No. 23 ¶¶ 50–56.) To state a claim under this theory of supervisory liability, a plaintiff must allege that (1) an existing custom or policy created an unreasonable risk of the alleged constitutional violation; (2) the defendant knew of this risk; (3) the defendant was deliberately indifferent to the risk; and (4) the defendant's failure to implement a policy or procedure in response to that risk proximately caused the constitutional violation alleged. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

As a threshold matter, Hernandez has alleged that each of PPD Defendants have the authority to adopt and implement policies at CFCF. (Doc. No. 23 ¶ 27 ("[The PPD Defendants] were the policy makers for the Defendant City of Philadelphia . . . .").) He has also plausibly alleged each of the four factors set forth in *Sample*.

First, Hernandez plausibly alleges that the PPD's customs of permitting officers to use excessive force, failing to train officers on how to avoid excessive force, and failing to supervise officers while on the job created an unreasonable risk that officers would continue using excessive force on inmates. (*See id.* ¶ 51 ("[The PPD Defendants] . . . failed to properly train their officers in the use of force at the prisons; and they failed to properly supervise the [I]ndividual Defendants, before and during the aforementioned use of excessive force . . . ."); *see also id.* ¶ 26 ("Defendant City of Philadelphia still does not properly train and supervise corrections officers regarding the use of force on inmates.").)

Second, Hernandez plausibly alleges that the PPD Defendants knew that these customs created an unreasonable risk that officers would continue to use excessive force on inmates going

9

forward. (*See id.* ¶ 26.) Hernandez enumerates twelve instances of officers using excessive force on inmates within the Philadelphia Prison System since 2014. (*Id.*) This detailed recitation of other, similar events, many of which resulted in lawsuits, is sufficient to allege that the PPD Defendants knew there was a risk officers would continue to utilize excessive force if not properly disciplined, trained, or supervised. *See Neal v. Powell*, Civ. No. 17–4768 (RBK) (KMW), 2018 WL 2754071, at *5 (D.N.J. June 8, 2018) (finding that the plaintiff "pled enough facts to suggest that [the supervisor] had actual knowledge of . . . the risk posed by the alleged deficient policy" where the complaint alleged "that there has been a documented history of the deployment of excessive force by corrections officers at Bayside").

Third, Hernandez pleads that the PPD Defendants acted with deliberate indifference toward the risk that corrections officers might use excessive force on inmates. Deliberate indifference may be established in this context by "showing that the supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff['s]." *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 136 (3d Cir. 2001). Hernandez details twelve events involving similar facts, and he alleges that the PPD Defendants "were aware of all of the constitutional violations in the City's inmate population." (Doc. No. 23 ¶¶ 26–27.) The allegations that the PPD Defendants were aware of—and failed to adequately respond to—a dozen instances of excessive force on its inmate population over the course of eight years is sufficient to allege deliberate in difference. *See Capps v. Dixon*, Civil No. 19-12002 (RMB/AMD), 2021 WL 2024998, at *6 (D.N.J. May 21, 2021) ("If, as [the plaintiff] alleges, the Millville Police Department maintained a policy or custom of permitting officers to use excessive force without consequence, [the Police Chief] could be liable under § 1983."); *Neal*, 2018 WL 2754071, at *5 (finding that the plaintiff pled deliberate indifference where the complaint detailed a

"documented history of the deployment of excessive force," of which the plaintiff alleged "that [the supervisor defendant] had knowledge").

Last, Hernandez alleges that the PPD Defendants' failure to implement a policy or procedure in response to officers' repeated use of excessive force within the Philadelphia Prison System proximately caused him to be the victim of the CO Defendants' excessive force. (*See* Doc. No. 23 ¶ 52 ("[The PPD Defendants] negligently and unnecessarily with deliberate indifference created a dangerous situation, thereby causing serious injury to the Plaintiff, which is a violation under the law and the Constitution of [the] United States of America[] and in particular, the due process clause of the Fourteenth Amendment and their rights under 42 [U.S.C.] § 1983.").)

In sum, Hernandez plausibly alleges that the PPD Defendants were responsible for setting policy within the Philadelphia Prison System, knew that officers within the system regularly used excessive force on inmates, and were deliberately indifferent to the use of such force, which, in turn, caused the CO Defendants to brutally attack Hernandez. Accordingly, Hernandez has stated a claim for supervisory liability.

**IV.     CONCLUSION**

For the reasons above, the City's and the PPD Defendants' motions to dismiss are denied. An appropriate Order follows.